**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ESTEFANIA GUILLEN SERRANO,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 8:25-cv-04060-CDA** |
| **MAKI LLC,** | * | |
| **Defendant.** | * | |
| | * | |

* * *

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on a Joint Motion for Judicial Approval of FLSA Settlement and to Stay the Case Pending Receipt of Settlement Funds by Plaintiff ("Joint Motion"). ECF 7. Plaintiff Estefania Guillen Serrano ("Plaintiff") filed this action against Defendant Maki LLC ("Defendant"), alleging a claim for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). ECF 1; 29 U.S.C. §201. For the reasons discussed below, the Court will GRANT the Joint Motion.

**BACKGROUND**

This case arises from allegations that Defendant failed to pay Plaintiff overtime pay and for her work during off-the-clock hours. *See* ECF 1, at ¶ 18; ECF 7, at 1-2. Plaintiff alleges she worked for Defendant's restaurant as a cook from September 29, 2023 to December 2, 2025, and was paid on an hourly basis as a non-exempt employee during this time. ECF 1, at ¶¶ 1, 6; ECF 7, at 1-2. From November 13, 2025 to March 9, 2025, Plaintiff further alleges she worked for an average of 43.5 hours a week and did not receive a *bona fide* lunch break, since she was frequently interrupted to perform work duties or she ate while she was working. ECF 1, at ¶ 8; ECF 7, at 1-2.

Plaintiff commenced this action against Defendant on December 10, 2025. ECF 1. In the Complaint, Plaintiff alleged Defendant violated the FLSA, the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). ECF 1, at 1. Plaintiff further alleged her inability to calculate her damages because her time and payroll records were in Defendant's possession. *Id.*, at ¶ 10. Following Defendant's failure to timely respond to the Complaint, Plaintiff filed a Motion for Default pursuant to Federal Rule of Civil Procedure 55(a) on January 23, 2026. *See* ECF 4.

After the Clerk entered an order for default, counsel for both parties began a settlement negotiation process. ECF 7, at 2.; *see* ECF 5. Defendant asserts Plaintiff did not work overtime and therefore was not entitled to overtime compensation. ECF 7, at 2. Defendant further disputes Plaintiff's allegations of frequent interruptions during her lunch breaks to perform work duties. *Id.* Specifically, Defendant argues Plaintiff took a 30-minute lunch break, often arrived to work late or left early, and took numerous days off—resulting in her working fewer than 40 hours a week. ECF 7, at 4. During the negotiation process, Defendant provided Plaintiff with her payroll and time records, which Plaintiff then used to create a detailed calculation of her damages. *Id.*

On April 30, 2026, following a several-weeks long negotiation, Plaintiff and Defendant (collectively, "Parties") signed a settlement agreement for $26,254.00. *See* ECF 7, at 1; ECF 7-1; ECF 7-2. This amount allocates $15,254.00 to Plaintiff's claims for unpaid overtime wages and liquidated damages, and $11,000.00 to Plaintiff's attorneys' fees and costs. *See* ECF 7, at 1; ECF 7-1; ECF 7-2. The Joint Motion includes documentation of Plaintiff's counsel's time entries, detailing that six individuals expended a total time of 32.3 hours on this case, at a proposed charge of $12,837.00. *See* ECF 7-2, at 1-4. Plaintiff's counsel highlights that this proposed charge reflects

their hourly rates for 31.3 hours of expended time, *Id.* at 4; *see* ECF 7, at 6, and the negotiated charge accounts for Plaintiff's counsel's voluntary reductions. ECF 7, at 6.

The Joint Motion emphasizes the Parties' request for the Court's Settlement Agreement approval. *Id.* at 2. On May 11, 2026, the parties consented to the jurisdiction of the undersigned. ECF 8. Judge Boardman then referred this matter to the undersigned "[f]or all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) by consent of the parties." ECF 9.

**LEGAL STANDARD**

Generally, court approval is not needed for parties in a lawsuit to settle and dismiss all issues. Fed. R. Civ. P. 41(a)(1)(A)(ii). One exception to this rule arises in FLSA settlement claims, since the FLSA "protect[s] workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees." *Beam v. Dillion's Bus Serv., Inc.*, No. DKC-14-3838, 2015 WL 4065036, at *2 (D. Md. July 1, 2015); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014). Thus, settlement agreements that resolve FLSA claims must receive court approval. *Gionfriddo v. Jason Zink LLC*, No. RDB-09-1733, 2011 WL 2791136, at *2 (D. Md. July 15, 2011) (citations omitted).

Courts will approve an FLSA settlement insofar as it "reflects a 'reasonable compromise of disputed issues' rather than a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *Duprey*, 30 F. Supp. 3d at 407 (quoting *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982))). Though the Fourth Circuit has not directly determined the factors for a settlement approval, District Courts in the Fourth Circuit generally consider three factors to find whether an FLSA settlement reflects a fair and reasonable resolution of a *bona fide* dispute. *Duprey*, 30 F. Supp. 3d at 408. These factors include "(1) whether

there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." *Id.* Furthermore, where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [their] rights under the statute," these factors are most likely to be satisfied. *Id.*

**ANALYSIS**

For the following reasons, the Court finds that the FLSA issues in this case are actually in dispute, the settlement is fair and reasonable, and the attorneys' fees are reasonable. Therefore, the Court GRANTS the Joint Motion to Approve FLSA Settlement and to Stay the Case Pending Receipt of Settlement Funds by Plaintiff.

***A. There is a Bona Fide Dispute regarding FLSA Provisions between the Parties.***

To determine whether "a *bona fide* dispute exists as to a defendant's liability under the FLSA, the court examines the pleadings in the case, as well as [] the representations and recitals in the proposed settlement agreement." *Hackett v. ADF Rests. Invs.*, 259 F. Supp. 3d 360, 364 (D. Md. 2016). A *bona fide* dispute exists "when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009); *see, e.g., Mendoza v. Filo Café, LLC*, No. 23-2703-AAQ, 2024 WL 964226, at *2 (D. Md. Mar. 5, 2024) (finding *bona fide* dispute where parties disagreed whether employee worked overtime hours and whether employer failed to pay employee overtime compensation); *Prudencio v. Triple R. Constr. Corp.*, No. 22-1202-BAH, 2024 WL 1557205, at *3-4 (D. Md. Apr. 10, 2024) (finding *bona fide* dispute where parties disagreed whether employer failed to pay overtime wages to employee); *see also Galizia v. Ricos Enters., Inc.,* No. DKC-21-2592, 2022 WL 374511, at *2 (D. Md.

Feb. 8, 2022) (finding *bona fide* dispute where defendants disagreed with number of hours plaintiffs worked).

In this case, like in *Galizia* and *Mendoza*, Defendant disputes Plaintiff's claims that she worked at an average of 43.5 hours per week—overtime and through her lunch breaks—during the period in question. ECF 7, at 3-4. Specifically, Defendant argues that Plaintiff took a thirty-minute lunch break, often arrived to work late, and took numerous days off, resulting in less than forty hours a week. *Id.* at 4. Furthermore, like in *Mendoza* and *Prudencio*, Defendant disputes Plaintiff's claims regarding her entitlement to overtime hours and lack of proper wage payment. *Id.* at 2, 4. Thus, the Court concludes that these disagreements constitute a *bona fide* dispute between the parties under the FLSA.

***B. The Settlement Agreement is Fair and Reasonable.***

Courts assess whether a settlement agreement is fair and reasonable under the FLSA by considering the following six factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel[;] and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Duprey,* 30 F. Supp. 3d at 409 (internal quotation marks and citations omitted). There is a "strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate[,] and reasonable." *Lomascolo*, 2009 WL 3094955, at *10 (internal quotations and citations omitted).

Under the first two factors, courts consider the extent of discovery that has taken place and the stage of the proceedings. In assessing these factors, courts evaluate whether the parties had enough time to "conduct sufficient discovery to fairly evaluate

the liability and financial aspects of [the] case." *Id.* at *11 (alteration in original) (internal quotations omitted). However, courts also focus on whether the parties had a sufficient exchange of information to make informed decisions, even if formal discovery did not take place. *See Mendoza*, 2024 WL 964226, at *2 (assessing whether "sufficient information" allowed the parties "to make informed, intelligent decisions"); *Hackett*, 259 F.Supp.3d at 366 ("[T]hough no formal discovery took place, . . . the informal exchange of information between [the] parties has allowed them to appropriately ascertain facts and evaluate the strength of their respective positions[.]"). Furthermore, "[p]arties may settle an FLSA case at an early stage provided that a plaintiff has had sufficient opportunity to evaluate the viability of [their] claims and the potential range of recovery." *Id.* This standard is often met when parties exchange records and engage in extensive settlement negotiations to avoid significant litigation costs in the future. *See Li v. Escape Nails & Spa, LLC*, No. DKC-23-1487, 2025 WL 460752, at *2 (D. Md. Feb. 11, 2025) (finding settlement fair and reasonable where parties "participated in 'extensive negotiations,'" had a "sufficient opportunity to obtain additional evidence through informal discovery'" and agreed to settle to avoid "a lengthy and costly litigation process"); *Saman*, 2013 WL 2949047, at *4-5 (finding settlement fair and reasonable where parties exchanged pay records and benefited from "vigorous representation and negotiations" to avoid costly litigation).

Here, the Parties had not begun formal written discovery nor held any depositions at the time they reached a settlement agreement. ECF 7, at 5. Nevertheless, in the Joint Motion, the Parties argue that additional discovery (including depositions) would not have further informed Plaintiff's evaluation of damages because the settlement amount reflects what she would be owed if her alleged damages were proved as in the Complaint. *Id.* When the Parties reached their

agreement, they evaluated Plaintiff's payroll and time records to negotiate a settlement for her alleged unpaid wages and liquidated damages. Like in *Hackett*, where the Court found that the parties' exchange of information allowed them to assess the facts and move forward with the negotiation process without formal discovery, the Parties in this case found these records sufficient for them to move forward with the negotiations, even though there was no formal discovery process. ECF 7, at 2, 5; *see* 259 F. Supp. 3d at 366. Thus, the Parties had a sufficient exchange of information such that they could fairly evaluate the liability and financial aspects of the case. *Lomascolo*, 2009 WL 3094955, at *11; *Mendoza*, 2024 WL 964226, at *2; *Hackett*, 259 F.Supp.3d at 366.

Additionally, the Parties explain that this settlement allows them "to avoid the unnecessary accumulation of litigation costs and attorneys' fees []" because the settlement amount accounts for her damages, costs, and attorneys' fees. ECF 7, at 5. Like in *Li* and *Saman*, the Parties' settlement is the result of a several-week long negotiation, exchange of records, and calculation to avoid these additional costs. ECF 7, at 2, 5; *see Li*, 2025 WL 460752, at *2; *Saman*, 2013 WL 2949047, at *4-5. For the foregoing reasons, the first two factors weigh in favor of approving the Settlement Agreement.

The third factor guides courts to assess whether there has been any fraud or collusion in the formation of the settlement agreement. To begin, there is a "presumption that no fraud or collusion occurred between counsel[.]" *Lomascolo*, 2009 WL 3094955, at *12. Even so, the Joint Motion explains that counsel have "ensured that this case was in an adversarial context through arms-length negotiations [and] absent any fraud or collusion[.]" ECF 7, at 5. Because there are no facts before the Court to suggest fraud or collusion, the third factor weighs in favor of approving the Settlement Agreement.

Under the fourth and fifth factors, courts look to the experience and opinions of counsel. Here, Plaintiff is represented by Suvita Melehy of Melehy & Associates LLC, who has more than thirty years of experience practicing law and handling wage-and-hour claims. ECF 7, at 5. The Court has also recognized Plaintiff's counsel as competent and experienced in FLSA matters. *See Guillen v. Armour Home Improvement, Inc.*, No. DLB-19-2317, 2024 WL 1346838, at *3 (D. Md. Mar. 29, 2024); *Camara v. Black Diamond Rest. LLC*, No. 23-1782-AAQ, 2024 WL 4644635, at *3 (D. Md. Oct. 31, 2024). Therefore, the Court is satisfied that Plaintiff's counsel has sufficient experience.

Additionally, as discussed above, counsel for both Parties posit that that the settlement enables all parties to avoid unnecessary litigation costs and attorneys' fees. ECF 7, at 5. "Counsel's opinion that the expense and potential duration of litigation [weigh] in favor of early settlement lends credence to a proposed settlement agreement." *Menendez v. William III, Inc.*, No. 24-261-AAQ, 2024 WL 5126733, at *4 (D. Md. Dec. 17, 2024). The Parties explain that the settlement amount represents what Plaintiff would recover if she proved her damages as alleged in the Complaint, that Defendant will pay separately Plaintiff's attorneys' fees and costs, that Plaintiff is also receiving close to her liquidated damages under the FLSA, and that both counsellors believe the settlement is fair and reasonable. ECF 7, at 5. Like in *Menendez*, these facts support counsel's representation that the settlement was negotiated in the best interest of their clients. *Id.*; *see also Menendez*, 2024 WL 5126733, at *4. For the foregoing reasons, the third and fourth factors weigh in favor of supporting the Settlement Agreement.

Finally, the sixth factor advises courts to consider the probability of Plaintiff's success and the relationship between the amount of the settlement and the potential

recovery. Though "counsel's opinion and recommendation" regarding a Settlement Agreement's "fairness and reasonableness" should not be "blindly followed," *Saman*, 2013 WL 2949047, at *5 (quotations omitted), the representations made by both Parties' counsel, as discussed above, favor approving the Settlement Agreement.

Therefore, after considering the relevant factors and reasons, the Court finds the Settlement Agreement to be fair and reasonable.

### *C. Based on the Consent of the Parties and the Circumstances of the Case, the Settlement Agreement awards Reasonable Attorneys' Fees and Costs.*

Under the FLSA, a prevailing party is entitled to attorneys' fees in addition to their damages. *See Prudencio*, 2024 WL 1557205, at *5; *Duprey*, 30 F. Supp. 3d at 411. Furthermore, judicial review of the reasonableness of attorneys' fees is necessary "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Portillo v. Intipuqueno Rest.*, No. PWG-15-3909, 2019 WL 979627, at *4 (D. Md. Feb. 28, 2019) (quotations omitted).

When assessing the reasonableness of counsel's legal fees, courts in the Fourth Circuit use the lodestar approach. *Hackett*, 259 F.Supp.3d at 367 (citing *Lyle v. Food Lion Inc.*, 954 F.2d 984, 988 (4th Cir. 1992)). This approach multiplies "the number of hours reasonably expended. . . by a reasonable hourly rate" to achieve "an objective basis on which to make an initial estimate of the value of the lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An hourly rate is reasonable under the lodestar approach if it is "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). The Court uses the Fitzpatrick Matrix, as adjusted annually. *See* Local R. App. B(3) (D. Md. 2025) ("A useful guideline for hourly rates may be provided by the

Fitzpatrick Matrix[] as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).").

In this case, the Parties have agreed that Defendant shall pay Plaintiff the sum of $26,254.00, where $15,254.00 is allocated to Plaintiff's damages and $11,000.00 is allocated to settling Plaintiff's attorneys' fees and costs. ECF 7, at 1. Plaintiff's counsel's lodestar reflects 31.1 hours of billed time. ECF 7-2, at 1-4; ECF 7 at 7. This time is split among three partners, paralegals, and law clerks. ECF 7-2, at 1-4; ECF 7 at 7. Additionally, the time expended on Plaintiff's case includes "[r]esearching Defendant[] for purposes of drafting Complaint"; identifying the proper Defendant; interpreting calls between Plaintiff and counsel; "[d]rafting the Complaint"; "[f]inalizing the computation of damages"; corresponding with opposing counsel regarding the settlement offer; and "[d]rafting the joint motion for approval." ECF 7-2, at 1-4. Furthermore, counsel has noted their hourly rates in the lodestar: $695.00 for Omar Vincent Melehy (Partner); $645.00 for Suvita Melehy (Partner); $465.00 for Andrew Balashov (Partner); and $245.00 for the Paralegals/Law Clerks. *Id.*

Here, Plaintiff's counsel's hourly rates fall within the Fitzpatrick Matrix, even when accounting for a twenty percent reduction.[1] *See* Local R. App. B(3); U.S. Att'y's

[1] According to the Fitzpatrick Matrix, the hourly rate for legal fees for an attorney with over thirty years of experience is $739.20, accounting for a twenty percent reduction. Mrs. Melehy's hourly fees fall within that rate. Though the Plaintiff's counsel does not clearly discuss Mr. Melehy's nor Mr. Balashov's experience practicing law in the Joint Motion, other opinions by this Court discuss that Mr. Balashov has more than nine years of experience and Mr. Melehy has more than forty years of experience as attorneys. *See Epps v. AZ Battery Rescue LLC*, No. 23-01870-LKG, 2026 WL 1967121 (D. Md. July 8, 2026); *Hernandez v. Olney Enterprises, Inc.*, No. GLS-25-01528, 2026 WL 290967 (D. Md. Feb. 3, 2026). The Fitzpatrick Matrix notes that the hourly rate for an attorney with at least ten years of legal experience is $578.40, and the hourly rate for an attorney with more than thirty-five years of experience is $746.40, both accounting for the twenty percent reduction. Therefore, Mr. Balashov's and Mr. Melehy's hourly rates both fall within the Fitzpatrick Matrix. Counsel's hourly rates for their Paralegals/Law Clerks also fall within the Matrix amounts, albeit they do not account for the five to twenty percent reduction. *See* U.S. Att'y's Off. for D.C., Civil Div., The Fitzpatrick Matrix,

Off. for D.C., Civil Div., The Fitzpatrick Matrix, https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf (last visited Sept. 1, 2026).[2] Furthermore, because the attorneys' fees will not be deducted from Plaintiff's award, she will receive her full wages. *See Hackett*, 259 F.Supp.3d at 367 ("[T]he wronged employee should receive his full wages plus the [liquidated damages] penalty without incurring any expense for legal fees or costs.") (internal quotation marks and citations omitted; alteration in original). Those considerations support the conclusion that the attorneys' fees identified in the Settlement Agreement are reasonable.

## CONCLUSION

For the foregoing reasons, the Settlement Agreement constitutes a fair and reasonable compromise of the parties' *bona fide* dispute under the FLSA, and the attorneys' fees and costs provided for in the Settlement Agreement are reasonable. Therefore, the Court GRANTS the Joint Motion to Approve FLSA Settlement and to Stay the Case Pending Receipt of Settlement Funds by Plaintiff. A separate Order shall issue.

Date: September 2, 2026

/s/
Charles D. Austin
United States Magistrate Judge

---

https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf (last visited Sept. 1, 2026).

[2] It is worth noting that even if the listed rates exceeded those in the Fitzpatrick Matrix, higher rates may be reasonable in FLSA settlements when all parties have agreed to them. *See, e.g., Flores v. Diverse Masonry Corp.*, No. 23-3215-LKG, 2024 WL 2863575, at *6 (D. Md. June 6, 2024); *Hernandez v. Nelson Precast Prods., LLC*, No. 21-2814-LKG, 2023 WL 7089919, at *7 (D. Md. Oct. 26, 2023); *Sutton v. Capital City Motorsports LLC*, No. 24-1665-AAQ, 2025 WL 385773, at *4 (D. Md. Feb. 4, 2025); *Acker v. Craig Testing Labs. of Md., Inc.*, No. 24-1945-AAQ, 2025 WL 254800, at *4 (D. Md. Jan. 21, 2025).